*1140 OPINION
By the Court,
Springer, J.:
This is an appeal from a judgment denying Merle Buffalo’s post-conviction petition. Buffalo was convicted, pursuant to a jury verdict, on one count of battery with the use of a deadly weapon, one count of mayhem, and one count of sexual assault. Buffalo is now serving a sentence of life imprisonment in the Nevada State Prison for the sexual assault conviction, plus two ten-year terms for the mayhem and battery convictions.
Buffalo claims in this appeal that his attorney did not competently defend him and that he was, in effect, provided with “no defense” to the criminal charges which resulted in three felony convictions and the consequent punishment of life imprisonment plus ten years. We conclude that Buffalo is right. He was not provided .with what could be fairly called a “defense,” and this rendered his convictions unreliable. Buffalo was denied his right to effective assistance of counsel as guaranteed by the Sixth Amendment of the United States Constitution and article 1, section 8 of the Nevada Constitution. We reverse Buffalo’s three judgments of conviction.
Before discussing the merits of this appeal and the issues relating to counsel’s representation of Buffalo, it is important that certain introductory matters be clarified. At first blush the case appears to be very uncomplicated and easy to dispose of. This court had no hesitancy in unanimously dismissing Buffalo’s direct appeal on the merits because this appeared to be a case of “overwhelming” guilt. No exculpatory evidence was presented by the defense; in fact, nothing was presented by the defense, not even an opening statement by defense counsel. There were two defendants charged with severely beating a man causing him to be hospitalized and later to have a tooth extracted. The principal witness was the “victim,” who told a story of the defendants’ vicious and unprovoked attack upon him. Other witnesses corroborated this testimony and testified in gory detail about the terrible beating that had ensued. There was no possibility that Buffalo could have been acquitted of these charges. There was absolutely nothing upon which a jury could have based an acquittal.
On direct appeal, we had no occasion to go behind the trial transcript or to suspect that there was more to this case than met the eye. In post-conviction proceedings, however, an entirely different scenario revealed itself after the entire record of these proceedings was reviewed. This court can, of course, make no judgments on the facts in this case, and the unsworn statements of *1141 Buffalo and his co-defendant, Street,[1] have no weight in this appeal other than as some indication that there was an available defense that defense counsel was not aware of, or, if she was aware of it, declined to present.
Naturally, we make no judgments on the veracity and reliability of the defendants’ statements, some made before, some made after, the trial. There is, however, a certain coherency and believability in Buffalo’s version of the events that lead to the conclusion that Buffalo might have had some defense to the charges; whereas, at trial, he had none.
Buffalo did not testify in his own defense, and there is no apparent reason why he did not do so, given his post-conviction statement that described the fight as one provoked by an assault upon him and which had all the appearances of a mutual affray involving the two defendants and the “victim.” It appears quite likely, given the amount of time spent by counsel in the preparation for trial, that counsel did not interview Buffalo about what actually happened at the scene. This perception becomes more believable when we learn that the sole defense presented by counsel to the three charges levied against Buffalo related only to the sexual assault charge, that defense being that, as a matter of law, Buffalo could not be convicted of sexual assault unless he enjoyed some “sexual gratification or sexual arousal” accompanying the assault.
As previously mentioned, the facts of this case are quite simple, if we accept only the facts that were adduced at trial, the uncontradicted facts at trial being that Buffalo beat up on one Wayne Ellison, that he hit him with a board that had a nail in it, that Ellison later had to have a tooth extracted, and that either Buffalo or his codefendant partially inserted a bottle of some kind into Ellison’s anus. For the purposes of this appeal, which involves only issues relating to the manner in which counsel represented Buffalo, we will include in our narrative of facts not only those taken from the evidence at trial, but those claimed to be true by the two defendants, Buffalo and Street, facts which were not presented at trial. In doing this, we of course disclaim the making of any judgment as to the truth or falsity of the defendants’ version of the facts. Had all of the facts been presented, the jury may or may not have accepted them and could have convicted Buffalo on one, two or all three of the charges *1142 against him. This is not the point. The point is that in order to explore the question of adequacy of counsel, we find it necessary to relate all of the possible versions of events as they appear in the record now before us. The following is a broad-spectrum narration of the facts as they would likely have been presented to the jury had Buffalo taken the stand in his own defense. It is necessary to present the facts in this way in order to evaluate the quality of Buffalo’s legal defense.[2]
Buffalo’s three felony convictions arose out of a fist fight that began when the “victim” of the crimes, Wayne Ellison, assaulted Buffalo’s female companion, Donna Street. According to Ms. Street’s statement to the police, she and Ellison “got into a fight” and Buffalo “intervened” and hit Ellison. Buffalo claims that Ellison was “grabbing on Donna,” and that when he told the man to “keep his hands off,” Ellison punched him in the face. After this, the fight escalated, with Street and Buffalo hitting Ellison with fists, bottles and a “stick which had a nail protruding from it.” Ellison, a diabetic, had to be taken to the hospital. Buffalo and Street were taken to jail.
Buffalo’s principal contention on appeal is that during the two-month period before the commencement of his trial his defense attorney spent less than two hours in preparing for the trial and that this alone requires reversal of his convictions. The defense attorney’s billing records for trial preparation show that she did not see Buffalo until the day before trial and that on that day she spent an hour “reviewing jury questions” and an additional forty-five minutes in “consultation” with her client, Merle Buffalo. The billing shows that no time was spent investigating the facts relating to the charges and that no time was spent in legal research. These facts are unchallenged by the State and are documented by counsel’s billing records.[3]
*1143 Buffalo argues that defense counsel’s spending only one and three-quarters hours of preparation on the day before trial is inadequate on its face for a trial involving three major felonies and the possibility of his remaining in prison until he died. It is certainly arguable that even highly talented and experienced criminal defense counsel could not have adequately prepared for a trial of this magnitude in less than two hours and that this fact alone mandates a reversal of the convictions. Rather than accept the argument that one hour reviewing jury questions and three-quarters of an hour consulting with a defendant is inadequate as a matter of law in a three-felony, life-imprisonment case, however, we have chosen to give careful scrutiny to the record in this case in order to make our own, independent evaluation of the quality of representation which Buffalo received.
Buffalo’s defenses to the three charged felonies can be described in two categories: (1) the wrong defense and (2) no defense. In defending against the sexual assault charges (that Buffalo had inserted a liquor bottle into Ellison’s rectum), defense counsel urged that this offense was legally impossible because Buffalo had “received no sexual excitement or sexual satisfaction.” This defense is wrong, clearly wrong.
In defending against the mayhem and battery charges, defense counsel presented no evidence that harm done to Ellison was brought about by Buffalo’s trying to defend Ms. Street and defending himself against Ellison’s attack. With regard to these charges Buffalo was given no defense.
It is not the lack of time spent in trial preparation alone that leads us to reverse these convictions — the lack of time spent in preparation for trial is only a symptom of what went wrong in this case. It appears that if counsel had spent perhaps fifteen minutes in legal research she would have been able to convince herself that sexual gratification is not an element of the crime of sexual assault.[4] With regard to the sexual assault charge, defense counsel *1144 put all of her eggs in this wrong basket. She took the position that there was no need to defend against uncontradicted prosecution evidence that her client Buffalo and Donna Street had engaged in sexual assault upon Ellison, on the totally incorrect legal supposition that no valid judgment of conviction could be entered against her client absent proof of sexual motivation on his part.
Ellison’s examining physician stated that “specific examination of his rectum revealed no evidence of trauma to the rectum” and that he was “unable to find any tearing or blood around Mr. Ellison’s rectum.” The only evidence of the anal assault is the testimony of Ellison, who was very intoxicated and who could not testify as to which of the two, Buffalo or Street, had insulted him in this manner. Buffalo claims that the reason Ms. Street tried to assault Ellison in this manner was her desire for revenge for Ellison’s having raped her when she was a child; but, Buffalo was never given an opportunity to testify and to convey this vital information to the jury.
At least defense counsel had a theory relating to the sexual assault charges, even if it was wrong. When it comes to the charges of mayhem and assault, however, there was not even a theory; counsel just decided to sit there and hope for the best and listen while Mr. Ellison described what was portrayed as a vicious and unprovoked attack against him. Understandably the prosecution did not have Ellison go into the defense of others and self-defense aspects of this affray. This was defense counsel’s job. Strangely, also, defense counsel did not raise the subject during cross-examination of Ellison. One is drawn to the conclusion that defense counsel did not learn during her forty-five minutes with Buffalo, on the day before the trial, that this was a self-defense and defense of others case.[5]
*1145 Given the fact that Ms. Street had told the police about how the fight was started, and given Buffalo’s account of events, it is difficult, indeed, to understand why Buffalo was not called to testify in his own defense.[6] Buffalo had no felony record that might have led to a tactical decision by counsel to keep him off of the witness stand[7]; and the fact that Ms. Street declined to testify[8] left the jury with only Mr. Ellison’s extremely inculpatory recount of an unprovoked attack upon him. The only explanation that presents itself is that defense counsel simply did not know that Buffalo had a story to tell. In the forty-five minutes that she spent “in conference” with Buffalo, apparently the subject of what really happened at the scene of the crime never came up. At the post-conviction hearing, defense counsel responded to questions by the district attorney about her preparation for this trial, and she testified that Buffalo had “supplied no leads” that would have assisted her in the defense. This would also lead us to believe that since defense counsel’s forty-five minute conference with Buffalo apparently did not reveal to counsel Buffalo’s side of the story, she never really found out that this was a self-defense case in which Buffalo’s violence was provoked by Ellison’s attack upon Buffalo and his female companion, Ms. Street.[9] No other *1146 explanation presents itself as to why defense counsel would not have let the facts as they were perceived by her client and Donna Street (facts which tended to defeat the prosecution’s theory of a very violent and entirely unprovoked attack by Buffalo) be presented for the jury’s consideration and evaluation.
The position of the State relative to the quality of defense representation is that lack of defense does not really matter in this case and that effectiveness of counsel is irrelevant. According to the State, there was nothing wrong with defense counsel’s decision not to present any defense, because there was no defense. The State takes the position that it really does not matter that defense counsel devoted no time to legal research, to investigating the facts, to uncovering and interviewing witnesses and to preparing trial strategy; it does not really matter that defense counsel called no witnesses and did not even make an opening statement to the jury. It does not matter that the only time that defense counsel spent with her client in preparation for the trial was forty-five minutes on the day before trial. Nothing matters because, in the State’s view, there is nothing that defense counsel could have done that would have changed the hard reality of Buffalo’s guilt of all of the charges levied against him. The State’s attorney argued during post-conviction proceedings that this is not a “Whodunit,” that there was no doubt about who committed these ostensibly defenseless crimes and that, from the State’s perspective, there was no particular reason for defense counsel to call witnesses or otherwise interfere with the normal course of proceedings that were necessary in order to convict Buffalo of *1147 charges to which there was no possible defense. In its brief, the State points out that not every crime is defensible and that an attorney is not required to “do what is impossible.” United States v. Cronic, 466 U.S. 648, 656 n.19 (1983). The State takes the position that there is “no bona fide defense” to the charges and that “counsel cannot create one.” In sum, then, the State does not argue that defense counsel prepared adequately for this trial; rather, the State contends, in effect, that even if defense counsel had not bothered to drop by to see Buffalo at all on the day before trial and had spent no time at all in preparation, it would not matter because there was no conceivable defense that could have been presented on Buffalo’s behalf.
The problem with the State’s argument and the problem with this case in general is that the charges against Buffalo are defensible, and at all times there have been available defenses to the crimes with which Buffalo was charged. The district attorney is correct in characterizing the State’s case as being “overwhelming,”[10] only because the evidence presented to establish guilt was *1148 so overwhelmingly one-sided. Everything that the jury heard disfavored Buffalo and pointed toward a guilty verdict; there was nothing that was said by any of the witnesses in this case that did not favor a guilty verdict.
At trial, defense counsel advised the court, without further explanation, that Buffalo “did not wish to take the witness stand.” When counsel for Buffalo’s co-defendant, Donna Street, advised the court that his client was not going to testify, the court canvassed Street to be sure that this defendant knowingly and understandingly decided not to testify. The district court did not canvass Buffalo. If Buffalo had been canvassed in the same manner as was his co-defendant, then perhaps Buffalo’s defense counsel, and the court as well, would have learned of his defenses of self-defense and defense of others. Surely if defense counsel had been fully aware of Buffalo’s version of the facts, she would not have blithely decided not to have Buffalo testify in his own defense. It should have been obvious by then that letting the case go to the jury on the basis of Ellison’s account of an unprovoked attack on him virtually assured a guilty verdict. If, in fact, Buffalo had, inexplicably, told his attorney that he did not wish to testify on his own behalf, at the very least, one would expect that counsel for Buffalo would have had Buffalo disclose on the record that he had insisted that he did not want to present his defense to the jury and that he was doing so contrary to the advice of his attorney. It is hard to imagine a reason why Buffalo should not have told his story to the jury in this case.
*1149 Buffalo relies on the case of Warner v. State, 102 Nev. 635, 729 P.2d 1359 (1986). Warner was also a case in which the defendant was left without any defense. The defendant in Warner, like Buffalo, was charged with sexual assault and faced a sentence of life imprisonment. Also, as in the present case, only the actual participants in the charged assault had knowledge as to the events, and counsel failed to investigate the facts.[11] Based upon the mentioned factors, we held in Warner that
lack of preparation for trial left appellant without a defense at trial. Under the circumstances of the present case, we conclude that trial counsel’s performance was so deficient as to render the trial result unreliable. Accordingly, we conclude that appellant was denied his Sixth Amendment right to the effective assistance of counsel.
Id. at 638, 729 P.2d at 1361 (emphasis added).
Buffalo relies on Warner in support of his contention that reversal is required by reason of defense counsel’s lack of preparation alone. The State does not oppose this argument and does not even mention Warner in its answering brief. We assume that the State is not concerned about Warner for the reasons stated above, namely, the State’s belief that there was no real defense to the charges in this case. The State’s attorney in the State’s brief pushes aside as unimportant defense counsel’s spending less than two hours preparing for trial and facetiously remarks that at least the attorney “did not pad her bill.” In actuality the present case is a much clearer case of ineffective lawyering than Warner. Warner was based principally on counsel’s failure to engage in an investigation of the facts. Here there is much more than this. Defense counsel’s failure to investigate the facts, failure to call witnesses, failure to make an opening statement, failure to consider the legal defenses of self-defense and defense of others, failure to spend any time in legal research and general failure to present a cognizable defense rather clearly resulted in rendering the trial result “unreliable.”
*1150 Buffalo went to trial facing three very serious felony charges which could and did result in his being sentenced to prison for life. Under the circumstances of this case, we conclude, as we did in Warner, that “trial counsel’s performance was so deficient as to render the trial result unreliable.” 102 Nev. at 638, 729 P.2d at 1361; see also Strickland v. Washington, 466 U.S. 668 (1984). Buffalo was denied his right to the effective assistance of counsel guaranteed to him by the United States and Nevada Constitutions. See U.S. Const. amend. VI; Nev. Const. art. 1, § 8. We therefore reverse Buffalo’s convictions and remand this matter for a new trial.
Young and Rose, JJ., concur.

The extrajudicial statements of Street in some ways are helpful to Buffalo’s defense; in other ways they are harmful. There is a tendency by Street to blame Buffalo for the injury to Ellison and a tendency by Buffalo to blame Street. We reiterate: This court adopts no particular version of the facts; it merely concludes that Buffalo was not adequately defended in a case in which the jury heard all the bad news and none of the possibly good news.

The dissent devotes a lot of attention to arguing the facts in this case and insisting that one interpretation is more reasonable or acceptable than the other. The dissenting justice may find Buffalo’s story to be incredible; we make no judgment as to the credibility of Buffalo’s story, Street’s story or Ellison’s story. All we say is that each has a story and that only one story, Ellison’s story, was told at trial. Under these circumstances conviction was unavoidable.

In fairness to defense counsel we note that the day before trial was not the first time that she met Buffalo; she represented him during the preliminary examination and thus had some familiarity with the prosecution’s case, the essence of which was that Buffalo had seriously injured Ellison without any justification of any kind. The preliminary examination involved only the testimony of Ellison and two other witnesses. Defense counsel does not remember whether she interviewed the complaining witness or not, and no witnesses were called by the defense. The record contains attorney billing statements showing that defense counsel spent three hours and forty-five minutes preparing for the preliminary hearing. None of the time billed was *1143 time spent interviewing witnesses or conducting legal research. The attorney billing statements show legal research specific to the pretrial petition for writ of habeas corpus and the motion to sever the trials of Buffalo and Street.

Defense counsel’s all-eggs-in-one-basket defense was that “there must be some sort of sexual gratification or sexual arousal from the insertion of the bottle into the victim’s anus.” Although, certainly, to be guilty of sexual assault, one need not be sexually “aroused,” there must, as argued at some point by defense counsel in this case, be some “sexual connotation . . . present before the insertion of the foreign object into the anal opening is sexual assault,” as distinguished from some legitimate intrusion. Thus, a *1144 physician may insert a proctoscope into a patient’s anal opening without committing a sexual assault, but the same physician would be guilty of sexual assault if he were to insert a beer bottle in the same way. There is no question here about there being a legitimate or permissible intrusion into Ellison’s body orifice; and if Ellison had identified either Buffalo or Street as the person who had inserted the bottle into Ellison’s anus, there certainly would have been no need for the state to prove that the insertion was accompanied by “some sort of sexual gratification or sexual arousal.” These mental qualities are not essential elements of the crime of sexual assault; and defense counsel was very wrong to have relied on this as the sole defense presented on Buffalo’s behalf.

During the post-conviction hearing, the prosecutor asked defense counsel if at any time Buffalo had given her any “leads” that might have been valuable to the defense. She answered, “No.” It seems rather apparent that defense counsel had not learned, either through Street’s statement to the police or through her own client, that Buffalo’s initial attack on Ellison was made in defense of himself and his woman companion.

Neither Ms. Street nor Buffalo testified at the trial, so that the jury heard no testimony other than that of Mr. Ellison, the person who Buffalo claims had attacked Street and Buffalo. In Ms. Street’s statement to the police, she related her fear of Mr. Ellison, explaining that he had raped her when she was a young girl and that on the day of the supposed assault and mayhem, it was only after an altercation erupted between Street and Ellison that Buffalo “intervened” on Street’s behalf and, according to Street, was acting in her defense. Buffalo’s own account of the affray was that Ellison had punched him in the face and that he had reacted to this by fighting back. This case, obviously, would have taken on an entirely different complexion if this information had been conveyed to the jury.

The dissent claims that there was “a good reason why Buffalo did not testify” and identifies that reason as “Buffalo’s criminal background involving acts of violence.” The dissent then recites Buffalo’s “record” which was comprised of “all misdemeanor convictions.” There may have been some way in which the State could have introduced these misdemeanor convictions, but I do not know how; still, even if the misdemeanor convictions had come in, and the jury had learned that Buffalo had been involved in previous drunken brawls, this would not have been nearly as harmful as Buffalo’s complete silence and the jury’s knowing nothing of Buffalo’s version of the events.

Ms. Street’s attorney advised the court that his client was not going to testify because she was afraid that “the true facts of this particular matter may come out.”

Buffalo’s full story comes to light in the record in the statement he gave to an agent of the department of parole and probation. The author of the presentence report may be the first person who inquired of Buffalo as to what his version of the events was. The officer asked Buffalo to make out a *1146 complete written statement of events. In his handwritten statement Buffalo’s narration was substantially as follows:
Buffalo and his female companion (and co-defendant), Donna Street, were sharing a bottle of wine at an outdoor location near Fallon. (Buffalo has a history of severe alcohol abuse.) While they were drinking wine, a man named Wayne Ellison came upon them. Buffalo did not know Ellison, but Donna Street did. Street told Buffalo that she was “afraid of this guy” and that he had raped her when she was “real young,” (that is to say, when she was fourteen years old). Buffalo and Street nevertheless allowed Ellison to share some of their wine. Sometime after Ellison’s arrival, Ellison started “grabbing on Donna,” and Buffalo went to Street’s defense, telling Ellison “to keep his hands off.” Ellison responded by punching Buffalo in the face. Buffalo responded in turn to Ellison’s punch, and “[Buffalo] and [Ellison] fought” until Buffalo knocked Ellison out. After knocking Ellison out, Buffalo “sat down and drank some more.” “[L]ater” Street told Buffalo that she “wanted to get this guy back for what he did to her.” So Street “ripped off [Ellison’s] shirt and cut him with glass.” Street also told Buffalo that she intended “to put the bottle up his rectum.” Buffalo denies any participation in carrying out this threat and says he was “too drunk to know what was going on.” (Blood alcohol test results reveal that Buffalo’s blood alcohol content was .291 % at the time of his arrest.)

The State’s case is “overwhelming” principally because the defense offered no defense testimony and no defense evidence of any kind. Defense counsel did not even attempt during cross-examination to show extenuating circumstances, much less the compelling self-defense tenor of this case. Even given the one-sided nature of this trial, it may be overstating it to describe the State’s case as “overwhelming”; in fact, at least in part, it is rather weak.
First, with regard to the sexual assault case, we have already pointed out that there is no physical evidence of the assault, that Ellison does not know who assaulted him and that Buffalo says that Street tried (with a powerful motive) to assault Ellison with a bottle. This is certainly not an “overwhelming” sexual assault case.
With regard to the mayhem conviction, although we do not find it necessary to decide the point, it does not appear that it is legally possible for Buffalo to have committed this crime. In instructing the jury, the trial court gave the following definition of “mayhem”: “Mayhem consists of unlawfully depriving a human being of a member of his body, or disfiguring or rendering it useless.” NRS 200.280 (emphasis added). The State’s attorney correctly argued in final argument that we ordinarily think of a “member” as an “arm or a leg, but that it can also include any separate and distinct part of someone’s body.” Knowing that Ellison was not “deprived” of an arm or leg or otherwise injured in these extremities, the district attorney argued that Mr. Ellison “came in here minus some teeth.” Then: “Those teeth are members of his body.” Whether a tooth can be considered a “member” of the body that comes within the mayhem statute is a matter of serious doubt. Ellison lost his tooth by extraction performed by a dentist. If everyone who gets hit in the mouth and later has a tooth extracted would be able to charge his assailant with felonious mayhem, it would indeed be a vagary of the law. Further, the operative words of the statute are, “disables any limb or member of another.” (It may be noted that the indictment did not even charge that a tooth was “disabled”; rather the charge was that Buffalo’s actions “resulted] in the loss of members of [Ellison’s] body, to wit: teeth.”) If one has a tooth extracted and has a prosthetic replacement, one’s tooth can hardly *1148 be said to be “disabled” in today’s world. In whatever manner Buffalo might have injured Ellison’s mouth when he hit him, this is not a mayhem case, even if the injury resulted in a later tooth extraction and replacement by a dentist. This is hardly an “overwhelming” mayhem case even absent any defense on Buffalo’s part.
Finally, with regard to the battery with a deadly weapon conviction, the State identifies the deadly weapon in its brief as “a stick which had a nail protruding from it.” This stick was not introduced into evidence. It was marked as State’s Exhibit 10 for identification, but the prosecutor delayed introduction of the stick until he was able to lay a “further foundation as to additional witnesses.” Perhaps the problem was that there were two possible “sticks” in question and that neither was susceptible to proper identification or authentication. In any event, no “deadly weapon” was ever offered or admitted into evidence by the prosecution.
The fact that there was no deadly weapon impacts also on the mayhem conviction, which appears to be based on a loosened and later extracted tooth which resulted from Mr. Ellison’s being struck in the mouth with one of the potentially admissible sticks exhibits. It may be that the assault and mayhem convictions are inherently infirm by reason of the fact that the weapons involved never properly reached the jury. For the purposes of this opinion, however, this point is significant primarily on the issue of the lack of vigilance on the part of defense counsel, who permitted her client to get convicted on the basis of the use of a weapon that was never admitted into evidence.

Reversal in this case is not based solely on defense counsel’s failure to “investigate” the facts in the sense of trying to discover new witnesses or uncover physical evidence. No one can doubt here thatBulfalo and Street and Ellison were involved in a physical fight and that Ellison was seriously injured. Surely, however, defense counsel had the duty to interview the participants in the affray, Ellison, Street, and, most importantly, her own client, Buffalo. This is the area, principally, in which counsel failed to investigate the facts; although, in a case involving a penalty of life imprisonment, it would not have hurt to have investigated Ellison’s past, to have learned more about Ellison’s alleged rape of Street, to have examined the supposed “deadly weapon,” the stick with a nail in it (to see if it really were “deadly”) and to have made other factual inquiries that could have been conducted had a professional investigator been sought.